UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SHANNON MILLER**,                                 Case No. 1:10 CV 1326

        Plaintiff,                                 Judge Solomon Oliver, Jr.


        v.                                           REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY,**

        Defendant.                                  Magistrate Judge James R. Knepp II


## Introduction

Plaintiff Shannon Miller seeks judicial review of Defendant Commissioner of Social Security's decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3).

This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be remanded for further proceedings consistent with this Report and Recommendation.

**Background**

*Treatment History*[1]

On January 22, 2007, Plaintiff presented to Dr. Krajec with severe low back pain, depression, insomnia, and asthma. (Tr. 322). Her depression was noted to be improving on Effexor and she was noted to be having back pain because of severe levoscoliosis and congenital bony abnormality. (*Id.*). She was prescribed Ultram, Naprosyn, and Vicodin. (*Id.*).

Plaintiff underwent a State agency psychological consultative evaluation performed by Richard Halas, M.A., on January 26, 2007. (Tr. 343). Mr. Halas noted Plaintiff's speech pattern was slow and she spoke in a rather tense and anxious manner. (*Id.*). He noted her quality and amount of eye contact was poor. (*Id.*). Her appetite was described as being poor (*Id.*) and she had problems sleeping and generally showed to have extremely high levels of anxiety, with her hands trembling when extended in front of her. (Tr. 344). Plaintiff reported having bad panic attacks and related she had recently left a K-Mart because it was too crowded and she felt she couldn't breathe and was having a heart attack. (*Id.*). She felt as though the aisles were closing in on her and she abandoned her cart and left in her car. (*Id.*). She indicated she does not like being closed in and, consistent with this, requested Mr. Halas keep the door to his office open during the examination. (*Id.*). Mr. Halas observed Plaintiff's noticeable limp and that she seemed quite stiff at the conclusion of the evaluation. (Tr. 345). She reported having few friends and that she does not attend church or drive. (*Id.*). Mr. Halas diagnosed generalized anxiety disorder with occasional panic attacks,

---

[1] Plaintiff's challenges to the ALJ's decision do not directly concern her physical impairments, instead challenging the ALJ's questioning of the Vocational Expert and consideration of a treating psychiatrist. Accordingly, the undersigned will only relate Plaintiff's mental treatment history.

depressive disorder, borderline personality disorder, and a GAF score of 45 indicative of "serious symptoms". (Tr. 346). Mr. Halas opined Plaintiff is markedly impaired in her ability to relate to others, including peers, supervisors, and the general public, and also in her ability to withstand the stresses and pressures associated with most day-to-day work settings. (*Id.*).

On February 2, 2007, State agency reviewing psychologist, Roseann Umana, Ph.D., based on Halas' examination, found Plaintiff could understand, remember, and carry out simple instructions and many that are more complex. (Tr. 365). Dr. Umana also found Plaintiff should be limited to superficial and occasional interactions and also to settings not requiring adherence to strict time and production standards. (*Id.*).

On February 21, 2007 Plaintiff presented to Dr. Krajec with severe low back pain, chest pain, depression, and severe anxiety with panic attacks. (Tr. 321). Plaintiff was assessed with panic disorder with severe anxiety attacks and started on Xanax. (Tr. 321).

On January 1, 2008, Dr. Krajec noted Plaintiff's diagnoses were sciatica congenital vertebral abnormality at T12 and L1, insomnia, depression, muscle spasms, asthma, anxiety, neuropathy/radiculopathy, generalized anxiety, and migraine. (Tr. 310, 319). For these diagnoses, she was taking medications including Percocet, Lunesta, Effexor XR, Soma, Singulair, Albuterol, Neurontin, Buspar, Topamax, Fioricet, and Maxalt. (*Id.*).

On March 24, 2008, Plaintiff underwent another State agency psychological consultative evaluation by Margaret Zerba, Ph.D. (Tr. 377). Plaintiff described being molested by her stepfather from age eleven to eighteen. (Tr. 377). She reported being depressed and having panic attacks. (Tr. 378). Dr. Zerba diagnosed panic disorder with agoraphobia, dysthymia, and assigned a GAF score of 59. (Tr. 380-81). Dr. Zerba opined Plaintiff's ability to withstand stress and pressures of day to

day work activity is "extremely limited". (Tr. 381).

Following Dr. Zerba's consultative examination, a State agency records reviewing psychologist, Kristen Haskins, Psy.D., found Plaintiff capable of simple and likely a number of moderately complex tasks she is motivated to complete, in an environment that has a static (not fast paced) setting, with limited public contact, without a high production ratio, where she can work relatively independently with only superficial relating, and without over-the-shoulder supervision. (Tr. 399).

On April 22, 2008, Dr. Krajec prescribed Zanaflex for Plaintiff's muscle spasms and increased her Xanax dosage due to continued panic attacks. (Tr. 316). On May 20, 2008, Plaintiff was assessed with possible bipolar disorder and Abilify was added by Dr. Krajec. (Tr. 315). Plaintiff reported having a lot of anxiety with panic attacks and she was placed on Paxil for depression, Valium for anxiety/severe panic attacks, and Celebrex for costochondritis. (Tr. 313).

Plaintiff was examined in the emergency room on June 30 with reports of chest pain, was diagnosed with chest wall pain, and given Toradol intravenously. (Tr. 499). She was noted to be well known to the emergency room with a "significant psychiatric history of emotionality", was observed to be "usually somewhat depressive in ER presentation", and was "quite emotional" on examination. (Tr. 499).

Plaintiff underwent an initial psychiatric evaluation on August 15 with Dr. Khoa Tran, for depression and anxiety. (Tr. 405). She reported not sleeping well at night, worrying all the time, and having lots of depression, sadness, and hopelessness. (*Id.*). On examination, Plaintiff exhibited poor eye contact, poor hygiene, poor grooming, anxious mood, a lot of leg shaking, anxious fidgeting, psychomotor agitation, and her speech was decreased in tone and volume. (Tr. 405-06).

4

Her mood was anxious and depressed. (Tr. 406). Dr. Tran diagnosed major depressive disorder, moderate, panic disorder with agoraphobia, and assessed a GAF score of 48. (*Id.*). Dr. Tran increased Plaintiff's Paxil, and added Trazodone and Klonopin. (*Id.*).

Plaintiff was seen by Dr. Tran on follow-up on September 5, and described that she was struggling with inability to sleep and having a lot of headaches, anxiety, depression, and self-hopelessness. (Tr. 412). She was observed to have decreased tone and volume in her speech, and an anxious affect. (*Id.*). Dr. Tran assessed major depression with anxiety and initiated Remeron and discontinued Trazodone, but maintained the Paxil and Klonopin. (*Id.*). Plaintiff continued with increasing depression and anxiety on September 25, and alleged someone had sexually assaulted her. (Tr. 423). On examination, Dr. Tran noted Plaintiff was very tearful, sad, and depressed; he increased her Remeron dosage. (*Id.*). Dr. Tran completed a statement opining Plaintiff was totally unemployable for twelve months or more, and that she was unable to participate in any job rehabilitation activities. (Tr. 678-79). Dr. Tran noted Plaintiff was unable to remember tasks to be completed, had difficulty keeping things organized, had difficulty concentrating on tasks, had difficulty communicating needs, lacked the ability to problem solve on a consistent basis, sometimes used poor judgment, has difficulty remembering complex tasks, and has difficulty dealing with stressful situations. (Tr. 679).

Dr. Tran completed a mental assessment questionnaire on February 12, 2009, and opined Plaintiff is markedly impaired in all listed mental abilities, and her condition is likely to deteriorate if she is placed under stress, especially that of a job. (Tr. 442-43). Dr. Tran further opined Plaintiff would be absent from work more than three times a month due to her impairments or treatment. (Tr. 443).

5

On July 17, Plaintiff reported to Dr. Tran she was having a lot of anxiety; he replaced her Trazodone prescription with Sinequan. (Tr. 800). Plaintiff returned to Dr. Train on August 24 with continued chest pain, and reported being scheduled to have a heart catheterization at the Cleveland Clinic the following day. (Tr. 795). She was sleeping three hours at the most during the night. (Tr. 795). Dr. Tran maintained the Sinequan, Paxil, and Klonopin prescriptions and added Remeron. (Tr. 795).

*Administrative Hearing*

At the hearing held on August 26, 2009, the ALJ went off the record at the outset to allow Plaintiff to take pain medications for a developing headache. (Tr. 39). Plaintiff then testified that her mother helps her take care of her children, and that her mother drives her places and does her shopping for her. (Tr. 31, 34). Plaintiff testified she requires frequent breaks while doing the dishes, and that she cannot vacuum or sweep. (Tr. 31). She noted she had been experiencing chest pain for about a year (Tr. 33), and that she also has pain in her low back and down into her legs and feet. (Tr. 34). Additionally, Plaintiff noted she has had a shortness of breath for longer than the past year, and she thinks this may have been due to panic attacks. (Tr. 35). Plaintiff testified she experiences panic attacks twice per week, during which she feels as though someone is stabbing her, and that these typically last twenty minutes. (Tr. 37, 40). Plaintiff also testified she can sit/stand/walk for ten minutes before she needs to change position due to pain. (Tr. 36). She stated she is lucky to obtain two hours of sleep per night, and that her medications cause difficulty focusing. (Tr. 39).

The VE testified that Plaintiff has past relevant work as a cashier, janitor, laundry worker, and laborer. (Tr. 44). Based on the ALJ's hypothetical question, the VE opined the hypothetical individual would be able to perform work including that of a cashier, unarmed security guard, sorter,

6

and order clerk. (Tr. 45). Based on Plaintiff's counsel's hypothetical question, which adopted the ALJ's hypothetical question but added a limitation that the individual would be markedly limited in her ability to relate to others, the VE opined all jobs would be eliminated. (Tr. 47). The VE further opined there would be no jobs available for an individual if she had a marked limitation in her ability to handle customary work pressures. (*Id.*).

## Standard of Review

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## Standard of Disability

Eligibility for SSI and DIB is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

**Discussion**

Plaintiff presents two arguments against the ALJ's denial of benefits:

    1.    The ALJ erred by not crediting one of Plaintiff's treating psychiatrists; and

    2.    The ALJ erred by using a hypothetical question which did not accurately reflect the limitations he credited Plaintiff with having.

(Doc. 16, at 12-18). For the reasons described below, the undersigned agrees with Plaintiff on the latter argument and recommends her case be remanded for further proceedings.

*Dr. Tran - Treating Physician Rule*

Plaintiff argues the ALJ did not provide a good reason for giving little weight to the opinion of treating psychiatrist Dr. Tran.

An ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. § 404.927(d). In determining how much weight to afford a particular opinion, an ALJ must consider: are: 1) examining relationship; 2) treatment relationship – length, frequency, nature and extent; 3) supportability; 4) consistency; and 5) specialization. *Id.*; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

Generally, the medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). A treating physician's opinion is given "controlling weight" if supported by "medically acceptable clinical and laboratory diagnostic

9

techniques and is not inconsistent with other substantial evidence in the case record." *Id.* The ALJ must give "good reasons" for the weight it gives a treating physician's opinion. *Id.* Failure to do so requires remand. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409-10 (6th Cir. 2009).

After summarizing Dr. Tran's opinions, the ALJ stated:

On February 22, 2009 . . . Dr. Tran opined that the claimant is markedly limited in all areas of the world of work (Exhibit 22F). The undersigned accords Dr. Tran's opinions little weight. As noted above, the claimant takes care of her 2 children, runs her household, and takes care of finances. Her symptoms due to her mental impairments have responded well to treatment (Exhibits 8F, 20F, and 23F). The evidence of record is inconsistent with the degree of limitations Dr. Tran suggests.

(Tr. 20).

Plaintiff argues that Dr. Tran's opinions were in fact consistent with the two consultative psychologists – Drs. Halas and Zerba – and the ALJ relied instead on "the opinions of non-examining medical sources that differed from the opinion of all of the examining medical sources". (Doc. 22 at 3). Although Drs. Halas and Zerba found Plaintiff limited in some work areas (e.g. the ability to withstand work stress), they did not find Plaintiff was *markedly* limited in *all* listed mental abilities, as Dr. Tran did. Plaintiff does not identify, nor does the undersigned find, another source in the record finding marked limitations in all mental areas. The ALJ, perhaps inartfully, points to some daily activities of Plaintiff, her history of responding to treatment, and references a general inconsistency of the record as his reason for finding Dr. Tran's opinion worth little weight. A plain reading of the ALJ's opinion regarding Dr. Tran demonstrates the ALJ concluded that Dr. Tran's opinions were excessive, and the ALJ's proffered reasons suffice to explain the little weight accorded to a broad across-the-board finding of marked limitation.

*ALJ's Step Five Finding*

To meet his burden at the Fifth Step, the Commissioner must make a finding "'supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Education & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Id.* If an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *Ealy*, 594 F.3d at 516-17; *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (explaining that although an ALJ need not list a claimant's medical conditions, the hypothetical should provide the VE with the ALJ's assessment of what the claimant "can and cannot do"). "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

In *Ealy*, the Sixth Circuit found it was error for an ALJ to omit a restriction to moderate difficulties in concentration, persistence, and pace from his hypothetical question to the VE where the ALJ had elsewhere concluded the claimant had such restrictions. 594 F.3d at 516-17. The court found that a hypothetical limiting claimant to simple tasks did not adequately convey the claimant's restrictions. *Id*. The court held: "Because the controlling hypothetical inadequately described [the claimant's] limitations, the expert's conclusion that [the claimant] could [do other work] does not serve as substantial evidence that [the claimant] could perform this work." *Id.* at 517.

Here, the ALJ asked the VE to consider a hypothetical individual of the same age, education, and work experience as Plaintiff who was limited to:

11

> [L]ight work as defined in the regulations. The full range being diminished by the following. This individual can lift and carry 10 pounds frequently, 20 pounds occasionally. Can sit for eight hours in an eight-hour day. Walk or stand six hours in an eight-hour day, but should be an alternating sit-stand option. Only occasional bending and stooping, and no crawling or climbing. No exposure to excessive amounts of smoke, dust, or other air pollutants. And this individual is limited to [inaudible] simple, repetitive, non-productive type of job tasks.

(Tr. 44). Although the ALJ included a limitation to "low stress environments" in the RFC (Tr. 14), he did not include that limitation in the question he asked the VE, nor in any follow up question to the VE (Tr. 44-45). Plaintiff's counsel, on cross examination of the VE, asked whether the jobs cited would be performable if there was a moderate inability to interact socially appropriately with coworkers, peers, public, and supervisors, as well as moderate limitations in the ability to handle any kind of stress. (Tr. 48). The VE opined these limitations would not eliminate all work, but did not directly testify as to how those restrictions would impact the jobs he previously cited. (Tr. 48).

More importantly, in his written opinion, the ALJ found Plaintiff had "moderate difficulties" with "concentration, persistence or pace". (Tr. 14). But the ALJ did not ask the VE a hypothetical including these limitations. (Tr. 44-45). Nor did the ALJ include these limitations in his RFC finding (or explain why he did not do so). (Tr. 14-21).

The ALJ therefore committed the same error as in *Ealy* – he omitted a moderate limitation in concentration, persistence, and pace from the hypothetical question and the RFC, despite crediting it in his decision. 594 F.3d at 516-17; *see also Renn v. Comm'r of Soc. Sec.*, 2010 WL 3365944, *6 (S.D. Ohio). He further omitted a limitation to low stress environments in his hypothetical question, despite including this limitation in the RFC. As such, the VE's testimony cannot serve as substantial evidence to support the ALJ's decision at Step Five and remand is required.

**Conclusion and Recommendation**

Following review of the arguments presented, the record, and applicable law, this Court finds the Commissioner's decision denying DIB and SSI benefits not supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be remanded to rectify those errors identified above.

s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).